IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

TONJIA DEAVER BAKER,　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　)　　　Civil No. 3:15-CV-00637 (HEH)
　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN,　　　　　　　)
Acting Commissioner of Social Security,　)
　　　　Defendant.　　　　　　　　　)
_____)

REPORT AND RECOMMENDATION

On March 31, 2012, Tonjia Deaver Baker ("Plaintiff") applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from carpal tunnel syndrome in her legs, arthritis in her left knee and ankle, back problems, bipolar disorder, post-traumatic stress disorder and manic depression, with an alleged onset date of January 6, 2012. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision, and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. For Summ. J. ("Pl.'s Mem.") (ECF No. 13) at 13.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the

parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On April 5, 2012, Plaintiff filed an application for SSI with an alleged onset date of January 6, 2012. (R. at 176.) The SSA denied these claims initially on July 10, 2012, and again upon reconsideration on January 15, 2013. (R. at 105, 119.) At Plaintiff's written request, the ALJ held a hearing on May 14, 2014. (R. at 40.) On June 27, 2014, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform work existing in significant numbers in the national economy. (R. at 19-33.) On August 21, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite

her physical and mental limitations.  20 C.F.R. § 416.945(a).  At step four, the ALJ assesses

whether the claimant can perform her past work given her RFC.  20 C.F.R. § 416.920(a)(4)(iv).

Finally, at step five, the ALJ determines whether the claimant can perform any work existing in

the national economy.  20 C.F.R. § 416.920(a)(4)(v).

### III.  THE ALJ'S DECISION

On May 14, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel)

and a vocational expert ("VE") testified.  (R. at 38-74.)  On June 27, 2014, the ALJ issued a

written opinion, finding that Plaintiff did not qualify as disabled under the Act.  (R. at 19-33.)

The ALJ followed the five-step evaluation process established by the Social Security Act

in analyzing Plaintiff's disability claim.  (R. at 19-33).  At step one, the ALJ determined that

Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset

date.  (R. at 21.)  At step two, the ALJ determined that Plaintiff suffered from the following

severe impairments:  degenerative disc disease, osteoarthritis of the left knee, reflex sympathetic

dystrophy of the left lower extremity, chronic pain syndrome, obesity and bipolar disorder.  (R.

at 21-22.)  At step three, the ALJ determined that Plaintiff did not suffer from an impairment or a

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 22-25.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as

defined in 20 C.F.R. 416.967(b) except that she required use of a cane to ambulate and must

alternate between sitting and standing in place every half hour.  (R. at 25.)  Plaintiff could climb

ramps and stairs occasionally, but could never climb ladders, ropes or scaffolds.  (R. at 25.)

Plaintiff could only occasionally balance, stoop, kneel, crouch or crawl.  (R. at 25.)  She could

perform unskilled work, or work with a specific vocational preparation of no more than two, in a

non-production oriented work setting with no interaction with the public and occasional interaction with co-workers and supervisors.  (R. at 25.)

At step four, the ALJ found Plaintiff unable to perform any past relevant work.  (R. at 31.)  At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy.  (R. at 31-32.)  Therefore, Plaintiff did not qualify as disabled under the Act.  (R. at 32.)

## IV.  ANALYSIS

Plaintiff, forty-seven years old at the time of this Report and Recommendation, previously worked as a caregiver and corrections officer.  (R. at 176, 196.)  She applied for Social Security Benefits, alleging disability from carpal tunnel syndrome in her legs, arthritis in her left knee and ankle, back problems, bipolar disorder, post-traumatic stress disorder and manic depression, with an alleged onset date of January 6, 2012.  (R. at 176, 195.)  Plaintiff's appeal to this Court alleges that the ALJ erred in assessing Plaintiff's mental RFC.  (Pl.'s Mem. at 13-19.)  For the reasons set forth below, the ALJ did not err in his decision.

### A.  The ALJ's RFC Assessment Adequately Accounted For Plaintiff's Moderate Limitations in Concentration, Persistence or Pace.

Plaintiff first argues that the ALJ erred in assessing Plaintiff's mental RFC, because the ALJ did not adequately account for Plaintiff's limitations in concentration, pace and persistence, and formulated a hypothetical inconsistent with the Fourth Circuit's holding in *Mascio*.  (Pl.'s Mem. at 13-14.)  Defendant responds that the ALJ fully complied with the requirements of *Mascio* and adequately accounted for Plaintiff's moderate restrictions in concentration, persistence and pace.  (Def.'s Mot. For Summ. J. ("Def.'s Mot.") at 14.)

Before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920 (e)-(f), 416.945(a)(1).  In analyzing

5

claimant's abilities, an ALJ must first assess the nature and extent of the claimant's physical and

mental limitations and then determine the claimant's RFC for work activity on a regular and

continuing basis. 20 C.F.R. § 404.1545(b). Generally, the claimant bears the responsibility to

provide the evidence that the ALJ utilizes in making his RFC determination; however, before

making a determination of not-disabled, the ALJ must develop the claimant's complete medical

history, including scheduling consultative examinations if necessary. 20 C.F.R.

§ 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical

evidence in the record and those impairments that have a basis in the claimant's credible

complaints. 20 C.F.R. § 404.1545(e). In assessing a claimant's RFC, the ALJ must conduct a

function-by-function analysis. *Mascio*, 780 F.3d at 635-36. The Court may remand where the

ALJ fails to assess a claimant's capacity to perform relevant functions, or where the ALJ's

analysis contains inadequacies that frustrate meaningful review. *Id.* The assessment must

include a narrative discussion of how the evidence supports each conclusion, citing specific

medical facts and non-medical evidence, including daily activities and observations. SSR 96-8p.

When addressing a claimant's mental limitations in concentration, persistence and pace,

the ALJ must take into account an individual's ability to stay on task, rather than restricting an

individual to "simple, routine tasks or unskilled work." *Mascio*, 780 F.3d at 638 (citing

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (clarifying that only a

hypothetical that addresses the ability to stay on task properly accounts for a claimant's

limitations in concentration, persistence and pace)).

Numerous district courts have held that an RFC limiting an individual to work in a non-

production oriented environment properly addresses an individual's ability to stay on task. *See*

*Eastwood v. Colvin*, 2016 WL 805709, at * 4 (E.D. Va. Feb. 12, 2016) (holding that a

hypothetical limiting an individual to jobs not performed at assembly line pace adequately accounted for the plaintiff's limitations in concentration, persistence or pace); *Linares v. Colvin*, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (holding that a hypothetical limiting an individual to "simple repetitive, routine tasks in a stable work environment at non-production [*sic*] pace with only occasional public contact" accounted for the plaintiff's ability to stay on task); *Massey v. Colvin*, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015) (distinguishing *Mascio* on the grounds that the ALJ's hypothetical included that the individual should work a non-production oriented job and, thus, accounted for the Plaintiff's production pace); *but see Scruggs v. Colvin*, 2015 WL 2250890, at *6 (W.D.N.C. May 13, 2015) (remanding because the ALJ's hypothetical limiting an individual to simple, routine, repetitive tasks in a non-production environment did not address an individual's ability to stay on task).

The ALJ here formulated a mental RFC that limited Plaintiff to unskilled work, or work with a specific vocational preparation of no more than two, in a non-production oriented work setting. (R. at 25.) The ALJ further limited Plaintiff to a work setting with no interaction with the public and only occasional interaction with coworkers and supervisors. (R. at 25.) This RFC essentially tracks the RFC that this Court upheld as consistent with *Mascio* in *Parker v. Colvin*, 2015 WL 5793695 (E.D. Va. Sept. 29, 2015). In *Parker*, the ALJ found the plaintiff capable of "performing unskilled work with a specific vocational preparation code of no more than two in a non-production oriented work setting. Plaintiff should have no interaction with the public and only occasional interaction with coworkers or supervisors." *Parker*, 2015 WL 5793695, at *21 (internal record citations omitted). In finding this hypothetical appropriate under *Mascio*, this Court concluded that "because the ALJ's hypothetical included a non-production work

environment restriction, the ALJ's hypothetical and corresponding RFC determination appropriately considered Plaintiff's moderate limitation in concentration and pace." *Id.* at *23.

Substantial evidence supports the ALJ's mental RFC in the form of medical records. Throughout the record, treating medical sources noted that Plaintiff exhibited a cooperative attitude with an appropriate mood and affect. (R. at 27, 297, 307, 331, 341-42, 355, 367-68, 387, 389, 538, 620, 635-36, 744, 805, 875.) Additionally, she exhibited normal appearance, normal speech and language, intact attention and concentration, and a normal fund of knowledge, with an ability to answer all questions appropriately. (R. at 27, 297, 307, 331, 341-42, 355, 367, 386, 389, 538, 620, 635-36, 744, 805, 875.) Also, the treating medical sources often observed that Plaintiff exhibited no signs of depression or anxiety. (R. at 471, 473, 476, 485, 487, 493, 497, 502, 805, 919.) The record shows no treatment for psychological problems since 2006. (R. at 746.)

Substantial evidence in the form of Plaintiff's daily activities also supports the ALJ's mental RFC determination. Plaintiff indicated that she drove daily, prepared food and performed household chores. (R. at 29, 47, 53-59, 212-19, 253.) She also used public transportation, shopped in different stores several times weekly, paid bills, counted change and handled a savings account. (R. at 29, 53-59, 212-19.) Additionally, Plaintiff read, played cards and talked on the phone daily. (R. at 29, 47, 53-59, 212-19, 253.) Outside of the house, Plaintiff visited family and friends, went to a nursing home to visit the sick, attended church every week and visited the nail salon once a month. (R. at 29, 53-59, 212-19.) She could follow written and spoken instructions, and she even worked as a caregiver from April to June of 2013. (R. at 29, 47, 212-19, 253.)

8

The ALJ in this case properly accounted for Plaintiff's moderate limitations in concentration and pace by limiting her to unskilled work, or work with a specific vocational preparation of no more than two, in a non-production oriented work setting. The ALJ posed a hypothetical to the VE that incorporated all of these limitations. (R. at 71.) Accordingly, the ALJ did not err.

### B. The ALJ Did Not Err In Assigning Little Weight to the Medical Opinions Of Drs. Montgomery and Browne.

Plaintiff next argues that the ALJ erred in assigning little weight to the opinions of state agency psychologist Leslie E. Montgomery, Ph.D., and consultative examining psychologist Richard Browne, Ph.D., thereby impermissibly formulating an RFC based on raw medical data. (Pl.'s Mem. at 18). Defendant responds that substantial evidence supports the ALJ's RFC determination. (Def.'s Mem. at 17.)

#### 1. The ALJ Considered the Appropriate Factors When Weighing Opinion Evidence.

Plaintiff first argues that the ALJ incorrectly weighed the opinions of Drs. Montgomery and Browne, because she failed to accurately examine factors for evaluating opinion evidence.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations or medical expert evaluation that the ALJ ordered. 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the claimant's treating physicians, consultative examiners or other sources that comport with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions conflict internally with each other, or other

9

evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

State agency medical consultants are highly qualified physicians with expertise in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Therefore, when considering the opinion of a state agency medical consultant, the ALJ must evaluate those findings just as she would for any other medical opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). Except when the ALJ affords a treating source's opinion controlling weight, the ALJ must "explain in the decision the weight given to the opinions of a [s]tate agency medical . . . consultant . . . as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. §§ 404.1527(e)(ii), 416.927(e)(ii). Determining the specific weight of medical opinions has especially great significance, because the regulations further require a comparative analysis of competing medical opinions. *See, e.g.,* 20 C.F.R. § 404.1527(c)(1) ("Generally, [the Commissioner] give[s] more weight to the opinion of a source who examined [Plaintiff] than to the opinion of a source who has not examined [Plaintiff].") In deciding what weight to give to any medical opinion, an ALJ will consider such factors as whether an examining or treating physician rendered the medical opinion, the evidence cited in support of the medical opinion, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 416.927(c)(1)-(6).

In this case, the ALJ afforded examining physician Dr. Browne's opinions little weight, because Dr. Browne did not support the limitations listed in his opinion with objective medical findings and did not provide a clinical rationale for the limitations. (R. at 30). Additionally, the ALJ noted that Dr. Browne's findings lacked consistency with objective medical evidence in the record, including Dr. Browne's own objective findings. (R. at 30.) The ALJ also afforded little

weight to the opinion of state agency consultant Dr. Montgomery, because the evidence at the

hearing level provided sufficient information to make a determination, and the medical evidence

of record warranted differing limitations than those reflected in Dr. Montgomery's opinion. (R.

at 31.) Substantial evidence supports the ALJ's decision.

First, Dr. Browne's opinion as to Plaintiff's limitations contained significant internal

inconsistencies. In one paragraph, Dr. Browne found Plaintiff unable to perform work activities

for even a partial workday. (R. at 326.) However, in the very next paragraph, Dr. Browne

opined that Plaintiff could likely complete a partial workday, but not a full workday or

workweek. (R. at 326.) These two contradictory opinions diminish the credibility of Dr.

Browne's findings regarding Plaintiff's limitations. Indeed, the state agency noted these

inconsistencies at the reconsideration level and concluded that they rendered Dr. Browne's

opinion "less persuasive." (R. at 98.)

Furthermore, Dr. Browne's findings concerning Plaintiff's limitations conflicted with his

objective observations during the consultative exam. Specifically, Dr. Browne noted that

Plaintiff exhibited a polite and cooperative attitude with no signs of psychomotor excitement or

retardation. (R. at 325.) She made appropriate eye contact, seemed motivated to perform to the

best of her abilities and spoke fluently and at a normal rate. (R. at 326.) Additionally, Plaintiff

showed no signs of hallucinations, illusions, delusions or suicidal ideation. (R. at 325.)

Furthermore, she correctly performed serial two examinations to 20, correctly named common

objects and colors, and possessed an intact immediate memory. (R. at 325-26.)

Additionally, Dr. Browne's findings conflicted with the objective medical evidence in the

record. As the ALJ noted, treating medical sources frequently noted that Plaintiff exhibited a

cooperative attitude, an appropriate mood and affect, normal appearance, and normal speech and

11

language. (R. at 27, 297, 307, 331, 341-42, 355, 367, 387, 389, 620, 635-36, 744, 805, 875.)

She also demonstrated normal fund of knowledge, an ability to recall two out of three objects,

intact attention and concentration, normal judgment and insight, and an ability to answer all

questions appropriately. (R. at 27, 297, 307, 331, 341-42, 355, 367, 387, 389, 538, 620, 635-36,

744, 805, 875.) Additionally, Plaintiff's treating physicians often observed that she exhibited no

signs of depression or anxiety. (R. at 471, 473, 476, 485, 487, 493, 497, 502, 805, 919.) Indeed,

Plaintiff's records indicate that her last treatment for psychological problems occurred in 2006.

(R. at 746.) While Plaintiff reported feelings of depression to her treating physician in June of

2014, the evidence does not show that Plaintiff sought treatment for these issues. (R. at 740,

746.)

Moreover, Dr. Browne based his medical assessments of Plaintiff's limitations solely on

Plaintiff's subjective complaints. (R. at 30, 98, 321-326.) While Dr. Browne noted Plaintiff's

chronic pain, he never explicitly connected Plaintiff's pain with his assessment of Plaintiff's

limitations in concentration, pace and persistence. (R. at 323, 326.) Plaintiff contends that

substantial evidence in the file demonstrates that Plaintiff's pain and bipolar disorder caused her

limitations in CPP. (Pl.'s Reply Brief In Supp. Of Mot. For Summ. J. ("Pl.'s Reply") at 1.) This

contention lacks merit.

While Dr. Browne summarized Plaintiff's subjective complaints of pain, he never

connected these complaints to any limitations in concentration, persistence or pace. (R. at 322,

323, 326.) In fact, Dr. Browne did not identify any specific reasons why he believed Plaintiff

incapable of completing a full workday or workweek due to limitations in concentration,

persistence or pace. (R. at 326.) Thus, Dr. Browne did not support the limitations listed in his

opinion with any objective medical findings, nor did he provide a clinical rationale for those

12

limitations. Accordingly, substantial evidence supports the ALJ's decision to give Dr. Browne's opinion little weight. *See Stanley v. Barnhart*, 116 F. App'x 427, 429 (4th Cir. 2004) (finding the ALJ's decision supported by substantial evidence when the ALJ properly discredited medical assessments based solely on subjective reports, and found the majority of the evidence suggested plaintiff's daily activities were not affected to the extent alleged).

Additionally, testimony from the ALJ hearing and objective medical evidence supported differing limitations than those reflected in Dr. Montgomery's opinion. Dr. Montgomery found that Plaintiff suffered from marked limitations in her ability to carry out detailed instructions. (R. at 97.) He found moderate limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, and maintain regular attendance and punctuality within customary tolerances. (R. at 97.) Likewise, he found moderate limitations in her ability to work in coordination and proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 97.) Dr. Montgomery also noted that Plaintiff did not have significant limitations in her ability to carry out very short and simple instructions, to sustain an ordinary routine without special supervision, and to make simple work-related decisions. (R. at 97.)

However, treating medical sources consistently found that Plaintiff exhibited a cooperative attitude, an appropriate mood and affect, normal appearance, normal speech and language, a normal fund of knowledge, the ability to recall two out of three objects, intact attention and concentration, normal judgment and insight, and an ability to answer all questions appropriately. (R. at 27, 297, 307, 331, 341-42, 355, 367, 387, 389, 538, 620, 635-36, 744, 805, 875.) Further, in Plaintiff's written statements and testimony, Plaintiff indicated that she drove

daily, prepared simple food and performed household chores. (R. at 29, 47, 53-59, 212-19, 253.) She used public transportation, shopped in different stores several times weekly, paid bills, counted change and handled a savings account. (R. at 29, 53-59, 212-19.) Furthermore, Plaintiff read daily, played cards and talked to other on the phone daily. (R. at 29, 56, 212-19, 253.) Moreover, she visited friends and family, went to a nursing home to visit the sick, attended church weekly and went to a nail salon once a month. (R. at 29, 47, 53-59, 212-19, 253.) She followed written and spoken instructions and worked as a caregiver from April to June of 2013. (R. at 29, 47, 53-59, 212-19, 253.) Because the record supports differing limitations than those advanced by Dr. Montgomery, substantial evidence supports the ALJ's decision to give the opinion little weight.

Plaintiff's assertion that the ALJ failed to examine the consistency of the opinions of Drs. Montgomery and Browne in finding work preclusive limitations in concentration, persistence or pace has no merit. (Pl.'s Mem. at 17.) Although Dr. Browne concluded that Plaintiff may not have the ability to complete a full workday or workweek, Dr. Montgomery did not find that Plaintiff had work preclusive limitations in concentration, persistence or pace. (R. at 96-97, 326.) Dr. Montgomery found Plaintiff markedly limited in her ability to understand, remember and carry-out detailed instructions. (R. at 96-97.) This is the only marked limitation Dr. Montgomery found. (R. at 97.) In fact, Dr. Montgomery specifically determined that, while Plaintiff may have difficulty with co-workers and detailed tasks, she otherwise had less than marked limitations in concentration and persistence. (R. at 97.) Further, the state agency at the reconsideration level concluded that Dr. Browne's opinion overestimated the severity of Plaintiff's restrictions and limitation. (R. at 98.) In contrast to Dr. Montgomery's moderate limitations, Dr. Browne concluded that Plaintiff may not have the ability to complete a full

14

workday or workweek. (R. at 326.) Accordingly, Plaintiff's assertion that both Drs.

Montgomery and Browne found work preclusive limitations in concentration, persistence or pace

lacks merit.

To the extent that the opinions of Drs. Montgomery and Browne contained consistencies,

the ALJ properly accounted for those consistencies. For example, both Drs. Montgomery and

Browne concluded that Plaintiff lacked the ability to interact with co-workers and the public on a

regular basis. (R. at 97, 326.) As a result, the ALJ limited the Plaintiff's RFC to only occasional

interaction with co-workers and no interaction with the public. Therefore, the ALJ properly

considered the consistencies between the medical opinions.

### 2.  The ALJ Did Not Err in Formulating an RFC Without Guidance From Medical Professionals.

Plaintiff next argues that the ALJ, in discounting both the opinions of Drs. Montgomery

and Browne, committed reversible error in formulating an RFC without guidance from medical

professionals. (Pl.'s Mem. at 18.)

The ALJ alone bears the responsibility to make RFC and disability determinations. 20

C.F.R. § 416.927(d)(1)-(2). The ALJ must consider all relevant medical evidence, but a

statement by a medical source opining on a patient's disability or inability to work does not

necessitate a finding of disability under the Act. 20 C.F.R. § 416.927(d)(1). "While an ALJ is

'not at liberty to ignore medical evidence and substitute his own views for uncontroverted

medical opinion,' where the opinions lack consistency, the ALJ must 'evaluate the opinions and

assign them respective weight to properly analyze the evidence.'" *Ragsdale v. Astrue*, 2013 WL

774002, *7 (E.D. Va. Feb. 28, 2013) (quoting *Farrar*, 2012 WL 3113159, at *10). An ALJ may

assign no or little weight to a medical opinion if she sufficiently explains her rationale and if the

record supports her findings. *Nichols v. Colvin*, 100 F. Supp. 3d 487, 506 n.2 (E.D. Va. Nov. 7,

2014). In determining a claimant's RFC, the ALJ need not adopt a medical opinion in its entirety, and determines the appropriate RFC based on the record as a whole. *Wedwick v. Colvin*, 2015 WL 4744398, at *20 (E.D. Va. July 7, 2015), *Ragsdale v. Astrue*, 2013 WL 774002, at *7.

In this case, the ALJ considered all of the relevant medical evidence and appropriately determined Plaintiff's RFC based on the record as a whole. Plaintiff's reliance on *Farrar* is misplaced, as the ALJ in *Farrar* assessed a greater RFC than any medical opinion in the record and dismissed the physician's opinions without sufficient explanation. *See Farrar*, 2012 WL 3113159, *10-11 (recommending remand because the ALJ failed to give any weight to four congruent opinions). Here, the ALJ provided detailed explanation as to why she assigned both opinions little weight. (R. at 30-31.) Additionally, the ALJ did not substitute her own judgment for "uncontroverted medical opinion." As discussed previously, Dr. Montgomery's findings as to Plaintiff's functional limitations differed substantially from Dr. Browne's findings. (R. at 96-97, 326.) Further, the ALJ incorporated the only limitation found by both Drs. Montgomery and Browne by restricting Plaintiff's RFC to only occasional interaction with co-workers, and no interaction with the public. (R. at 25, 97, 326.) Contrary to Plaintiff's assertion, the ALJ did not ignore medical evidence or substitute her own views for uncontroverted medical opinion, because the record lacked an uncontroverted medical opinion. *See, Wedwick*, 2015 WL 4744389, at *20 (finding that ALJ did not impermissibly rely on lay opinion, because the medical opinions conflicted). The ALJ formulated an RFC consistent with the record as a whole. Accordingly, the ALJ did not base her RFC assessment on raw medical data and substantial evidence supports her determination.

V.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 14) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Henry E. Hudson and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____    /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  June 7, 2016